IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| ANTHONY P. DE LOS SANTOS, | |
| Petitioner, | **4:24CV3168** |
| vs. | |
| ROB JEFFREYS, Director; and NEB. DEPT. CORR. SERVICES, | **MEMORANDUM AND ORDER** |
| Respondents. | |

This matter is before the court on a Petition for Writ of Habeas Corpus (the "Petition"), Filing No. 1, filed by Petitioner Anthony P. De Los Santos ("De Los Santos"). For the reasons that follow, De Los Santos' Petition is denied and dismissed with prejudice.

## I. CLAIMS

De Los Santos asserts the following claims in his Petition that were potentially cognizable in this court:

Claim One:     Ineffective assistance of trial counsel due to counsel's instruction to De Los Santos to waive his right to a preliminary hearing in exchange for removal of the habitual criminal enhancement, which was not removed.

Claim Two:     Ineffective assistance of appellate counsel for failing to raise an ineffective assistance of trial counsel claim for

failure to call an alibi witness in violation of Petitioner's right to a fair trial.

Filing No. 7 at 1 (citing Filing No. 1 at 5-7).

## II. BACKGROUND

### A. Factual Background[1]

As set forth by the Nebraska Cout of Appeals, the evidence adduced at De Los Santos' jury trial was as follows:

> [O]n December 25, 2015, Scottsbluff police were called to investigate a burglary at a Burger King restaurant after a sheriff's deputy received a call about a safe being located "out in the country" with "a lot of items," such as "Burger King coupons." The investigation showed that someone had forced open the drive-through window of the restaurant and the door to the restaurant's office, stealing the safe from the office and about $6,200. The restaurant's security alarm system was not working properly at the time of the burglary, which was known by some of the restaurant's management employees.
>
> Items of evidence found in the restaurant office included a crowbar and a ball peen hammer. Outside of the office door, police recovered several pieces of paper with footprints on them. The papers were sent to the Nebraska State Patrol for footwear analysis, but the lab was unable to reach any conclusions about the type of shoes worn by the suspect. Police also located a two-wheel dolly that did not belong to the restaurant. The safe, from which the front door had been removed, was recovered at a location outside of Scottsbluff, along with an assortment of Burger King coupons, keys that belonged to the restaurant, and empty cash drawers. Police observed some red fabric caught on the safe but did not conduct analysis of the material.
>
> Police obtained surveillance footage of the burglary, which showed a suspect wearing a ski mask break into the restaurant's office and

---

[1] Pursuant to *Bucklew v. Luebbers*, 436 F.3d 1010, 1013 (8th Cir. 2006) (utilizing state court's recitation of facts on review of federal habeas petition), the Court recites the factual background as set forth by the Nebraska Court of Appeals.

remove the safe using the dolly. The suspect had extremely thick eyebrows. The surveillance video was played for the jury at trial.

One police officer who viewed the surveillance video thought he recognized the suspect as a man named "Michael Valdez," but he eliminated Valdez as a suspect after learning that Valdez was in jail at the time of the burglary. Another officer watched the video and then looked for "any similarities" in images on the Facebook pages of some of the Burger King employees. After she found a picture and the Facebook user name of a man she believed looked like the suspect, the officer compared images from Facebook and police databases and identified De Los Santos as the suspect shown in the Burger King surveillance video. According to the officer, in looking for similarities between the surveillance video and the Facebook pictures from which De Los Santos was identified, the facial features that "stuck out" to her were the nose and eyebrows. Copies of images, including some still images from the surveillance video and some of the Facebook images, were sent by police to someone at the Nebraska Department of Motor Vehicles who performs facial recognition analysis, but that individual was not able to reach any conclusions from his analysis.

De Los Santos's sister worked at the Burger King as an assistant manager. She is the mother of Valdez whom police rejected as a suspect due to his incarceration. De Los Santos' sister eventually identified De Los Santos to police from pictures of the surveillance footage and testified at trial that the suspect in the surveillance video "looked like him." At trial, she testified that she was not certain how long De Los Santos had been in town prior to the burglary, but she agreed that she told police he had been in town since the Sunday before Thanksgiving, testifying that she learned this information from her mother.

Filing No. 9-3 at 2-3.

## B. Conviction and Sentence

On January 25, 2017, in the District Court of Scotts Bluff County, Nebraska, De Los Santos was convicted by a jury of burglary, a Class IIA felony. Filing No. 9-11 at 3, 46-48. On February 27, 2017, the state district

court found De Los Santos to be a habitual criminal and sentenced him to a total of 12 to 20 years in prison. *Id.* at 50-51.

## C. Direct Appeal

De Los Santos, with new counsel, filed a direct appeal, alleging that (l) there was insufficient evidence to sustain his conviction, (2) the State induced him to waive his right to a preliminary hearing in return for a promise not to file an additional charge, (3) he received ineffective assistance of trial counsel, and (4) the district court imposed an excessive sentence. Filing No. 9-3 at 3.

On June 19, 2018, the Nebraska Court of Appeals affirmed De Los Santos' conviction and sentence finding his first, second, and fourth claims to be without merit. *Id.* at 4-5, 8. Regarding De Los Santos' third claim addressing ineffective assistance of trial counsel, the state court found the record to be sufficient to address his allegations that his trial counsel was ineffective for failing to move for a directed verdict and for failing to file a motion to suppress evidence obtained by a search warrant served shortly before his trial, and both of those allegations were denied on the merits. *Id.* at 6-7. As for the remaining allegations of ineffective assistance of trial counsel—advising him to waive his right to a preliminary hearing in exchange for the State waiving a habitual criminal charge, failure to obtain depositions of several of the State's witnesses, failure to file a motion for DNA/fingerprint analysis, failure to have the jury present when one of the police officers refreshed his recollection by watching a portion of an interview with Petitioner's sister, failure to call the State's facial recognition expert as a witness, and failure to call Petitioner's wife as an alibi witness—the court found the record on direct appeal to be insufficient to resolve those claims. *Id.* at 7-8.

De Los Santos filed a petition for further review to the Nebraska Supreme Court which was denied on August 7, 2018. Filing No. 9-1 at 4.

## D. Postconviction

On March 19, 2019, De Los Santos filed a timely motion for postconviction relief alleging claims of "ineffective assistance of trial counsel (1) as to the breach of the agreement to waive the preliminary hearing in exchange for removing the habitual criminal enhancement and (2) for failing to call his wife as a defense witness." Filing No. 9-12 at 2. The state district court granted an evidentiary hearing on these claims and the evidence adduced at that hearing was set forth by the Nebraska Court of Appeals as follows:

### (i) Failure to Challenge Breach of Alleged Agreement

The prosecutor sent De Los Santos' trial counsel an email on the morning of August 4, 2016, regarding a plea offer, which stated:

> This is set for PH at 3:45 pm. The evidence is going to be the same as the PC affidavit that's been on file for more than 6 months. [De Los Santos is] eligible for habitual, so I want him to wave [sic], I'll give him the B&E, and I won't file the bitch. Someone let me know. Thanks.

The prosecutor described this as a "standard e-mail" he typically sent when a habitual criminal charge was involved, "telling them to waive the preliminary hearing, they can plead to the underlying charge, and [he] won't pursue the habitual enhancement." He confirmed that that had been his intent with the email sent to De Los Santos' trial counsel, although he acknowledged he had not explicitly used the word "plea" in the email. He also clarified that his reference to "B&E" in the email was a reference to the burglary charge that had been filed against De Los Santos. According to the prosecutor, he had never in his career made an offer to drop a habitual criminal enhancement in exchange for a defendant's waiver of a preliminary hearing. When the prosecutor was asked whether he perceived any confusion in his conversations with De Los Santos' attorney as to "what the offer was," he replied, "No, [trial counsel] and I had done cases before. He's familiar with the lingo. I think he was dead on when he said that that was his

5

interpretation of it and apparently tried to get that across to ... De Los Santos."

The prosecutor testified that De Los Santos could have accepted the plea offer all the way up until trial. Arraignment in the district court was held on August 12, 2016, and the prosecutor noted that neither De Los Santos nor his trial counsel had objected at that time to the filing of the information that included the habitual criminal charge. On December 16, the prosecutor forwarded De Los Santos' attorney an email from December 8, reiterating the prosecutor's original offer. The December 8 email stated:

> I said from the beginning that he could take the B&E and I wouldn't pursue habitual. I filed the habitual count when I first filed in District Court just so it would be there. I will dismiss and agree not to pursue the habitual. Plus, I'll agree to remain silent at sentencing.

De Los Santos' attorney never responded to the offer, and the case proceeded to trial.

The testimony of De Los Santos' trial counsel about the plea offer and his interpretation of it were consistent with the prosecutor's. De Los Santos' attorney testified that he had planned on "doing the preliminary hearing" in this case until he received the prosecutor's email in the morning on the day of the hearing (which was scheduled for the afternoon). After receiving the email, he gave De Los Santos a copy of the email and spoke with him about it. With respect to the attorney's understanding of the email, he testified, "I interpreted it that if [De Los Santos] would agree to plead guilty to the burglary charge, that [the prosecutor] would not pursue the habitual criminal. And as part of it, [the prosecutor] had also asked that we waive the preliminary hearing." De Los Santos' attorney testified that he told De Los Santos that the email was:

> [K]ind of a plea offer but it's really not a plea offer because it's really too early to make any decision, but this is what [the prosecutor] is thinking at this point. And because habitual criminal has come in now, that

6

> he's going to be probably asking you to plead guilty to the burglary and in exchange they won't pursue the habitual.

He also told De Los Santos that the habitual criminal charge "has entered into the case," that the prosecutor did not have to offer any deal at all, but that if De Los Santos waived the preliminary hearing, it might make the process "a little bit easier." According to trial counsel, De Los Santos did not want to plead guilty to anything but indicated that he was willing to waive the preliminary hearing.

When the information with the habitual criminal charge was filed in district court, De Los Santos' trial counsel felt that the prosecutor "ha[d] the right to file it [the habitual criminal charge]." He indicated that he told De Los Santos, "[I]f we're going to work something out, it [the habitual criminal charge] could go away." Trial counsel was asked whether De Los Santos raised any concerns about the habitual criminal charge having been filed "in light of [the prosecutor's] e-mail to [trial counsel] prior to the preliminary hearing." Trial counsel testified that De Los Santos "may have" had some concern and that he thought his response had been to tell De Los Santos to re-read the prosecutor's email. In his testimony, trial counsel noted that the email did not say that the prosecutor would drop the habitual criminal charge in exchange for De Los Santos waiving the preliminary hearing. De Los Santos' attorney testified that he also spoke to De Los Santos about the December 2016 email reiterating the prosecutor's offer to dismiss the habitual criminal charge if De Los Santos pled guilty or no contest to the burglary charge and also offering to remain silent at sentencing. According to trial counsel, De Los Santos again refused to plead to any charge.

In his deposition, De Los Santos presented a view of the prosecutor's offer at odds with the position taken by the prosecutor and De Los Santos' trial counsel in their depositions. With respect to the offer as set forth in the prosecutor's August 2016 email, De Los Santos testified that his trial counsel told him, "[I]f you waive the preliminary hearing at least you don't have the habitual hanging over your head." De Los Santos also claimed that his attorney advised him:

7

> I would waive it if I was you because the court doesn't need much to bound [sic] you over and by your sister identifying you in a video, you're going to get bound over anyway. So if I was you, I would waive my preliminary hearing. That way the bitch don't be waiving [sic] over your head.

According to De Los Santos, he followed his attorney's advice, stating, "He told me to waive the preliminary hearing like so I waived it just like the paper said and they wouldn't file the habitual criminal."

De Los Santos also testified about his interaction with his trial counsel at the time of the arraignment in district court. According to De Los Santos, when he saw that the information included the habitual criminal charge, he told his attorney, "I thought we waived the preliminary hearing so that the habitual can go away." He testified that his attorney told him the habitual criminal charge would go away if he accepted the plea offer, that during the arraignment was "not the time to talk about this," and that his attorney would visit him later at the jail. With respect to the prosecutor's December 2016 email, De Los Santos testified that his trial counsel never spoke to him about it.

During cross-examination, De Los Santos expressed his understanding of the plea offer, stating, "There was no pleading guilty. I was waiving the preliminary hearing and that [the prosecutor] would only charge me with the B and E. That's the same way [trial counsel] told me, that's the way I took it." On redirect, De Los Santos again expressed his understanding of the "plea agreement" to be that if he waived the preliminary hearing, the State would not pursue the habitual criminal charges. And, he again stated that his trial counsel had advised, "I would waive it because at least the habitual is gone and you're only facing the burglary," and that he took this advice.

**(ii) Failure to Call De Los Santos' Wife as Trial Witness**

At some point, De Los Santos' trial counsel filed a notice of an alibi defense for De Los Santos. The prosecutor discussed his

investigation of the alibi defense claim in his deposition. When asked about his understanding of the proposed alibi defense, the prosecutor noted that at the pretrial hearing, De Los Santos' trial counsel mentioned having added a witness and "mentioned something about Carriage or Wagon Wheel." During his investigation, the prosecutor learned, contrary to the claim made by De Los Santos' wife in her pretrial deposition, that neither De Los Santos nor his wife stayed at the "Carriage Motor Inn" in Colorado in December 2015 (when the burglary occurred) or in January 2016.

The prosecutor forwarded the evidence uncovered during his investigation of the alibi defense to De Los Santos' trial counsel. This evidence included contact with De Los Santos' cousin, who refuted the wife's claim that he gave De Los Santos a ride from Nebraska to the motel in Colorado; and contact with the motel owner, who could not confirm that De Los Santos and his wife were there in December 2015, as well as supporting records from the motel. The prosecutor did not obtain credit card records refuting the wife's claims that she used her card for the hotel room in December 2015 until after trial. The prosecutor also received recordings of jail phone conversations between De Los Santos and his wife and an intercepted letter from De Los Santos to his sister telling her to take the stand during his trial and claim that "it was a case of mistaken identity" after she had previously identified De Los Santos in security footage to police. Because of the inconsistencies between the pretrial deposition testimony of De Los Santos' wife and the information the prosecutor discovered, he informed De Los Santos' trial counsel he would be filing perjury charges if the wife testified at trial. De Los Santos' attorney was also made aware that the prosecutor had witnesses ready to rebut the claims De Los Santos' wife would have made had she testified at trial.

De Los Santos' trial counsel also testified about the alibi claim. In 2015, De Los Santos and his wife were separated, and she lived in Colorado. De Los Santos claimed he was visiting her at a motel in Colorado at the time of the burglary, and trial counsel initially planned to have the wife testify at trial. However, when he investigated the alibi claim, he found there were no records showing that De Los Santos and his wife stayed at the claimed

motel at the time of the burglary. De Los Santos claimed he was "on very[,] very good terms" with the owners of the motel, but when trial counsel contacted the wife of the motel owner, she had no recollection of De Los Santos' wife and she "didn't find the records" supporting the claimed alibi. Trial counsel was aware of recorded calls between De Los Santos and his wife about De Los Santos' claim that his cousin gave him a ride to Colorado, which claim turned out to not be true. Trial counsel was also aware of contradictory statements by De Los Santos' wife about when they actually stayed at the motel, as well as the fact that the prosecutor was seeking credit card records to confirm whether De Los Santos and his wife had stayed at the motel at the time of the robbery.

De Los Santos' trial counsel testified that he discussed with De Los Santos the contradictory information uncovered and the risk of perjury charges against the wife if she did testify. According to trial counsel, he and De Los Santos "decided that it would be best probably that [the wife] not testify." De Los Santos' wife attended the trial, and trial counsel testified that if De Los Santos had demanded that she testify, trial counsel would have called her as a witness. Trial counsel stated that De Los Santos never indicated to him during trial that he had changed his mind and wanted his wife to testify.

In De Los Santos' deposition, when asked about his claimed alibi, he stated that he arrived at the motel in Colorado on either December 21, 22, or 23, 2015, and stayed for 3 to 4 months. According to De Los Santos, he performed handyman services at the motel as payment for rent. De Los Santos testified that he asked his trial counsel to contact the husband of the motel-owning couple, but that his counsel only contacted the wife who had assured counsel that they would never allow anyone to stay at the motel in exchange for labor. De Los Santos also claimed his trial counsel never discussed the State's evidence with him in detail and did not discuss "the pros and cons of going to trial versus taking an agreement." De Los Santos did indicate that he had seen police reports and testified that his trial counsel showed him a video of an investigator interviewing his sister about the case.

With respect to his wife testifying at trial, De Los Santos confirmed that his trial counsel told him the prosecution had information

10

contradicting the alibi and told De Los Santos, "I don't think we should use her" because of the potential perjury charges. De Los Santos testified, however, that he instructed trial counsel to call his wife as a witness and that he wanted her to testify, despite the risk of perjury charges.

Filing No. 9-4 at 3-6.

Following the evidentiary hearing the state district court denied postconviction relief finding no merit to any of De Los Santos' claims. Filing No. 9-12 at 62-66. De Los Santos appealed, Filing No. 9-8, and the Nebraska appellate court affirmed the denial of postconviction relief, Filing No. 9-4. De Los Santos filed a petition for further review with the Nebraska Supreme Court, which was denied. Filing No. 9-2 at 4.

## E. Federal Habeas

De Los Santos timely filed his federal habeas petition on September 13, 2024, raising two claims of ineffective assistance of counsel. Filing No. 1. Respondent filed the state court record on December 13, 2024, Filing No. 9, and an answer, Filing No. 11, and a brief in support on January 10, 2025, Filing No. 12. De Los Santos failed to file a reply and the time to do so has passed rendering the Petition ripe for review.

## III. OVERVIEW OF APPLICABLE LAW

As set forth in 28 U.S.C. § 2254:

> (b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
>
> > (A) the applicant has exhausted the remedies available in the courts of the State; or
> >
> > (B)(i) there is an absence of available State corrective process; or

11

> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

When, as here, a state court has adjudicated a habeas petitioner's claim on the merits, there is a very limited and extremely deferential standard of review both as to the law and the facts. *See* 28 U.S.C. § 2254(d). Section 2254(d)(1) states that a federal court may grant a writ of habeas corpus if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). As explained by the Supreme Court in *Williams v. Taylor*, 529 U.S. 362 (2000), a state court acts contrary to clearly established federal law if it applies a legal rule that contradicts the Supreme Court's prior holdings or if it reaches a different result from one of that Court's cases despite confronting indistinguishable facts. *Id.* at 405-06. Further, "it is not enough for [the court] to conclude that, in [its] independent judgment, [it] would have applied federal law differently from the state court; the state court's application must have been objectively unreasonable." *Rousan v. Roper*, 436 F.3d 951, 956 (8th Cir. 2006).

With regard to the deference owed to factual findings of a state court's decision, section 2254(d)(2) states that a federal court may grant a writ of habeas corpus if a state court proceeding "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Additionally, a federal court must presume that a factual determination made by the state court is correct, unless the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

As the Supreme Court noted, "[i]f this standard is difficult to meet, that is because it was meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

The deference due state court decisions "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Id.*

However, this high degree of deference only applies where a claim has been adjudicated on the merits by the state court. *See Brown v. Luebbers*, 371 F.3d 458, 460 (8th Cir. 2004) ("[A]s the language of the statute makes clear, there is a condition precedent that must be satisfied before we can apply the deferential AEDPA [Antiterrorism and Effective Death Penalty Act] standard to [the petitioner's] claim. The claim must have been 'adjudicated on the merits' in state court.").

The Eighth Circuit clarified what it means for a claim to be adjudicated on the merits, finding that:

> AEDPA's requirement that a petitioner's claim be adjudicated on the merits by a state court is not an entitlement to a well-articulated or even a correct decision by a state court. Accordingly, the postconviction trial court's discussion of counsel's performance—combined with its express determination that the ineffective-assistance claim as a whole lacked merit—plainly suffices as an adjudication on the merits under AEDPA.

*Worthington v. Roper*, 631 F.3d 487, 496-97 (8th Cir. 2011) (internal quotation marks and citations omitted).

The court also determined that a federal court reviewing a habeas claim under AEDPA must "look through" the state court opinions and "apply AEDPA review to the 'last reasoned decision' of the state courts." *Id.* at 497. A district court should do "so regardless of whether the affirmance was reasoned as to some issues or was a summary denial of all claims." *Id.*

When a petitioner asserts an ineffective assistance of counsel claim, the two-pronged standard of *Strickland v. Washington*, 466 U.S. 668 (1984), must be applied. The standard is very hard for offenders to satisfy.

13

*Strickland* requires that the petitioner demonstrate both that his counsel's performance was deficient, and that such deficient performance prejudiced the petitioner's defense. *Id.* at 687. The first prong of the *Strickland* test requires that the petitioner demonstrate that his attorney failed to provide reasonably effective assistance. *Id.* at 687-88. In conducting such a review, the courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

The second prong requires the petitioner to demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Further, as set forth in *Strickland*, counsel's "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable" in a later habeas corpus action. *Id.* at 690.

Additionally, the Supreme Court has emphasized that the deference due the state courts applies with special vigor to decisions involving ineffective assistance of counsel claims. *Knowles v. Mirzayance*, 556 U.S. 111 (2009). In *Knowles*, the Justices stressed that under the *Strickland* standard, the state courts have a great deal of "latitude" and "leeway," which presents a "substantially higher threshold" for a federal habeas petitioner to overcome. As stated in *Knowles*:

> The question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable—a substantially higher threshold. And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.

*Id.* at 123 (internal quotation marks and citations omitted).

14

## IV. DISCUSSION

Both claims set forth by De Los Santos in his Petition address alleged ineffective assistance of counsel (the first at trial and the second on direct appeal).  As the state appellate court set forth the appropriate legal standard for addressing such claims by citing to *Strickland*, *see* Filing No. 9-4 at 7-8, to succeed here De Los Santos must establish that the state court misapplied *Strickland* in denying his claims or the decision relied on an unreasonable determination of the facts in light of the evidence presented under 28 U.S.C. § 2254(d).

For the reasons that follow, De Los Santos has failed to do so, and, therefore, both of his claims must be denied.

### A. Claim One

In Claim One, which was exhausted in the state courts, De Los Santos' argues that his trial counsel was ineffective for instructing him to waive his right to a preliminary hearing in exchange for the removal of a habitual criminal enhancement. Filing No. 1 at 5.  This Court construes this claim as having two subparts: (1) failure to challenge the State's filing of the habitual criminal charge, and (2) failure to provide adequate counsel regarding what he was obtaining by agreeing to waive his preliminary hearing.  Indeed, in his Petition, De Los Santos focuses on the second part of this claim, arguing that although he agreed to waive the preliminary hearing, he did so minutes before it was to occur without any real explanation as to what he was agreeing to and had little time to decide, indicating his counsel's representation was deficient because he failed to provide De Los Santos with an adequate explanation of what he was agreeing to or why.  *Id.*

In rejecting the first subpart of this claim on the merits, following an evidentiary hearing before the lower court, the Nebraska Court of Appeals found the following:

15

> De Los Santos asserts that the district court erred in finding he was not entitled to postconviction relief on the issue of ineffective assistance of trial counsel as to the breach of the agreement to waive the preliminary hearing in exchange for removing the habitual criminal enhancement. De Los Santos has not shown that his trial counsel's performance in this regard was deficient.
>
> The district court referred to the emails between the prosecutor and trial counsel that were discussed in the depositions, noting the prosecutor and trial counsel's testimony that the offer was that if De Los Santos pled to the burglary charge, the State would not pursue the habitual criminal charge and that the prosecutor had also asked that De Los Santos waive the preliminary hearing. The court reviewed the emails exchanged by the attorneys and concluded that the "plain words" of those emails do not show any offer by the State to drop the habitual criminal charge in exchange for waiver of the preliminary hearing. We agree and conclude, as did the district court, that because De Los Santos never accepted the State's plea offer, there was no agreement to be breached. The offer was discussed with De Los Santos at the time of the preliminary hearing and again near the time of the pretrial conference, and he declined to enter a no contest or guilty plea to the burglary charge. Accordingly, there was no agreement to be breached, and De Los Santos' trial counsel could not be deficient in failing to challenge the State's filing of the habitual criminal charge. See *State v. Jaeger*, 311 Neb. 69, 970 N.W.2d 751 (2022) (as matter of law, counsel cannot be ineffective for failing to raise meritless argument to trial court). The district court did not err in denying this claim for postconviction relief.

Filing No. 9-4 at 8.

The focus of De Los Santos' claim in his Petition is what he perceives was his counsel's failure to adequately advise him regarding the connection between his agreement to forgo the preliminary hearing and the state's offer to drop the habitual criminal enhancement charge.  *See* Filing No. 1 at 5.  The state appellate court focused not on De Los Santos' counsel's explanation regarding what the State was offering and what De Los Santos understood but

16

on the emails exchanged by De Los Santos' counsel and counsel for the State as establishing there was no agreement by the State to drop the habitual criminal enhancement in exchange for waiver of the preliminary hearing. The court found that the State's offer to drop the habitual criminal enhancement was contingent upon De Los Santos agreeing to accept and enter the plea offered by the State. As De Los Santos declined to accept the plea offer, the state declined to drop the habitual criminal enhancement, leaving his counsel with no basis to object to the habitual criminal enhancement. To that end, this Court must give deference to the state court's factual findings, *see* 28 U.S.C. § 2254(e)(1), and De Los Santos supplies no basis on which to rebut the presumption of correctness this Court must apply, *id.*; *see also Harrington*, 562 U.S. at 102.

However, the basis for De Los Santos' claim is more than what was addressed by the state courts. In his postconviction motion, De Los Santos argued that, while "effective representation by trial counsel in this context must include clear communication between client and attorney, and some reasonable effort made by the attorney to adequately inform his client, to make sure that the client understands what is happening, and that the client is given a fair opportunity to consider the information and to make an informed decision[,] none of the foregoing occurred during the hurried conversation [between De Los Santos and his counsel], minutes before the start of the [preliminary] hearing."[2] Filing No. 9-8 at 12. He raises the same claim here— that his counsel was ineffective for failing to adequately inform and advise him regarding the waiver of the preliminary hearing. *See* Filing No. 1 at 5.

---

[2] *See* Filing No. 9-8 at 10 (noting that De Los Santos' motion, which was drafted pro se, refers both to a proffered agreement regarding the habitual criminal enhancement and his counsel's lack of communication/explanation to De Los Santos on the issue including that he was "forced to make his decision as to whether to waive his right to a preliminary hearing without a proper explanation of the effect of the State's proposal on his case. . . .").

However, upon review of the state appellate court's decision, this argument was not addressed by the state court, allowing de novo review by this Court. *See Cone v. Bell*, 556 U.S. 449, 472 (2009) (citing *Rompilla v. Beard*, 545 U.S. 374, 390 (2005) (citing *Wiggins v. Smith*, 539 U.S. 510, 534 (2003) (stating federal court review "is not circumscribed by a state court conclusion" when the state court did not reach the merits of a federal claim))),

Both De Los Santos' counsel and De Los Santos testified about this issue, with his counsel testifying that he explained the connection between the pending charges, a potential plea, the preliminary hearing, and the habitual criminal enhancement to De Los Santos, *see* Filing No. 9-4 at 5-6, and De Los Santos testifying that his counsel did not. De Los Santos testified that he did not understand the purported agreement regarding the preliminary hearing and the habitual criminal enhancement because he only learned of it about 5 minutes before the preliminary hearing when his counsel pulled him aside and showed him an email about an agreement and told De Los Santos he had to make his decision right then. *See* Filing No. 9-16 at 125-27.

De Los Santos does not argue, much less establish, how his waiver of the preliminary hearing ultimately affected the outcome of his trial as is required to establish prejudice under *Strickland*. While he appears to argue that had he been given adequate explanation regarding the potential agreement between the State and his counsel he would not have waived his preliminary hearing, he does not indicate how that event resulted in anything other than what ultimately occurred. And, as the state court found that there was no actual agreement in place, there is no basis on which to find that the waiver of his preliminary hearing ultimately affected the outcome of his case in any way.

For these reasons, De Los Santos is not entitled to relief on Claim One.

**B. Claim Two**

De Los Santos' second habeas claim is that his trial counsel was ineffective for failing to call his wife as an alibi witness at trial. Filing No. 1 at 7. This claim was also rejected on the merits by the Nebraska Court of Appeals following an evidentiary hearing before the lower court. Filing No. 9-4 at 8-9.

In support of his claim, De Los Santos presents the same argument that he did to the state courts: that had his wife been called as a witness she would have testified that De Los Santos was with her at the time the crime at issue was committed and that his counsel failed to provide him adequate representation by not calling her. *See* Filing No. 1 at 7. However, following an evidentiary hearing where both De Los Santos and his wife testified,[3] the state court found that given the conflicting evidence about De Los Santos' alleged stay in a motel in Colorado at the time of the burglary and the potential for perjury charges against his wife, the decision not to call her as a witness was a reasonable trial strategy and, thus, not deficient performance. Filing No. 9-4 at 8-9. The court also found that, given the strength of the evidence against De Los Santos, he could not show a reasonable probability of acquittal but for counsel's failure to have his wife testify that he was in Colorado at the time of the burglary, especially in light of the State's plan to call witnesses to rebut any such testimony. *Id.* at 9.

As noted, this Court must presume that the state court findings are correct unless a petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). However, in the instant matter, De Los Santos simply argues that his version of events, which the state court already considered and rejected, are actually correct. *See* Filing No. 1 at 7. Restating

---

[3] *See* Filing No. 9-16 at 117-77, 454-505.

previously rejected evidence without more provides this Court with no basis to find in De Los Santos' favor.   As such, Claim Two also fails.

## V. CERTIFICATE OF APPEALABILITY

A petitioner cannot appeal an adverse ruling on his petition for writ of habeas corpus under § 2254 unless he is granted a certificate of appealability. 28 U.S.C. § 2253(c)(1); 28 U.S.C. § 2253(c)(2); Fed. R. App. P. 22(b)(1). The standards for certificates (1) where the district court reaches the merits or (2) where the district court rules on procedural grounds are set forth in *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). The court has applied the appropriate standard and determined that De Los Santos is not entitled to a certificate of appealability.

IT IS THEREFORE ORDERED that the Petition for Writ of Habeas Corpus, Filing No. 1, is denied and dismissed with prejudice. No certificate of appealability has been or will be issued. Judgment will be issued by separate document.

Dated this 19th day of May, 2026.

BY THE COURT:

John M. Gerrard
Senior United States District Judge

20